UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARNOLD D. SCOTT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 20 C 4120 ) ) Judge Marvin E. Aspen |
| DR. FAUZIA KHAN, | ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

In this civil rights lawsuit brought pursuant to 42 U.S.C. § 1983, Plaintiff Arnold Scott alleges that Defendant Dr. Fauzia Khan was deliberately indifferent to his serious dental needs by failing to replace the filling in his tooth for more than ten months. Both parties move for summary judgment on Scott's claim. (Dkt. No. 49; Dr. Khan's Combined Response to Plaintiff's Motion for Summary Judgment and in Support of her Motion for Summary Jugdment [sic] (Dkt. Nos. 52, 53).)[1] For the following reasons, we deny Scott's motion and grant Dr. Khan's motion.

---

[1] Dkt. No. 49 consists of three documents: Plaintiff's Motion for Summary Judgement [sic] (pages 1–2), Plaintiff's Memorandum of Law in Support of Its [sic] Motion for Summary Judgment (pages 3–10), and Plaintiff's Rule 56.1 Statement of Facts in Support of Its [sic] Motion for Summary Judgment (pages 11–13). Hereafter, we refer to these three documents as "Pl.'s Mot.," "Pl.'s Mem.," and "Pl.'s SOF." Khan's motion for summary judgment (Dkt. No. 52) and her supporting memorandum (Dkt. No. 53) both have the same title. We refer to Dkt. No. 52 as "Def.'s Mot." and Dkt. No. 53 as "Def.'s Mem." For these and other ECF filings, we cite to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

## BACKGROUND

During the relevant period, Scott was a pretrial detainee at Cook County Jail ("the Jail"). (Defendant Khan's Response to Plaintiff's Rule 56.1 Statement of Material Facts ("Khan Resp. to Pl.'s SOF") (Dkt. No. 55) ¶ 2.) On July 4, 2018, while Scott was eating dinner at the Jail, the filling in his #30 tooth fell out, resulting in considerable pain. (Deposition of Arnold Dean Scott ("Scott Tr.") (Dkt. No. 49-2) at 51:11–21; Declaration of Fauzia Khan, D.D.S. ("Khan Decl.") (Dkt. No. 54-4) ¶ 10 (stating that Scott came to her for pain in his #30 tooth).) The same day, Scott, with the help of one of the Jail's employees, filled out a health request form, requesting to see someone for pain in his tooth. (Scott Tr. at 20:19–21:1.) Scott indicated on the form that the request was for an emergency. (*Id.* at 21:25–22:1.) He also informed the Jail employee who was assisting him of the pain he was experiencing. (*Id.* at 21:17–19.) Later that evening, a nurse gave Scott painkillers. (*Id.* at 24:3–16.) A few days later, Scott still had not seen a dentist, so he submitted an additional health request form. (*Id.* at 23:6–11.) In the meantime, Scott continued to experience pain. (*Id.* at 24:3–16 (stating that the pain pills he received "didn't work").)

On August 6, 2018, Scott was examined by Dr. Khan, a dentist who provided dental services to detainees and inmates at the Jail. (Plaintiff's Response to Defendant's Rule 56.1 Statement of Facts ("Pl.'s Resp. to Def.'s SOF") (Dkt. No. 61) ¶¶ 4, 5, 12.) During the examination, Dr. Khan recommended extracting the tooth. (*Id.* ¶ 13.) Dr. Khan believed that extraction "would more than likely" resolve Scott's "complaints of pain." (*Id.*) Dr. Khan prescribed Scott painkillers and said she could reschedule Scott for a follow-up visit. (Scott Tr. at 24:21–26:4; Pl.'s Resp. to Def.'s SOF ¶ 13.) Despite the painkillers, Scott continued to experience substantial pain in his tooth, and he had to avoid using one side of his mouth while eating because the pain from using the tooth was too intense. (Scott Tr. at 55:8–20.)

Scott saw Dr. Khan for another examination on September 17. (*Id.*; Khan Decl. ¶ 12.) During this examination, Dr. Khan again recommended extraction; Scott refused. (Khan Decl. ¶ 12.) Dr. Khan renewed Scott's painkiller prescription and told him that he could return at any time. (*Id.*) The painkillers did not adequately relieve Scott's pain. (Scott Tr. at 54:19–55:20.)

On April 22, 2019, Dr. Khan referred Scott to a dentist in Division 5 of the Jail. (*Id.* at 57:18–21; Khan Decl. ¶ 14.) This appointment, on June 5, 2019, was with Dr. Kahina Caldwell. (Khan Decl. ¶ 16; Scott Tr. at 27:1–5.) Dr. Caldwell told Scott that it would be possible to restore the filling for his tooth. (Scott Tr. at 30:5–15; Khan Decl. ¶ 16.) Dr. Caldwell and her assistant informed Scott that they would schedule him for another visit because Dr. Caldwell was too busy to perform the filling that day. (Scott Tr. at 58:2–14.)

On June 20, 2019, Scott saw Dr. Khan again. (Pl.'s Resp. to Def.'s SOF ¶ 19.) Dr. Khan restored Scott's filling that day. (*Id.*)

## LEGAL STANDARD

Summary judgment must be granted when there is no genuine dispute as to any material fact, and a party is entitled to judgment as a matter of law. *Celotex Corp v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). A genuine issue of material fact exists when there is sufficient evidence that a reasonable jury could find in favor of the nonmoving party. *Est. of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017). Thus, material facts are facts that may affect the result of the litigation. *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 584 (7th Cir. 2021). "Once the moving party puts forth evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

When assessing motions for summary judgment, the court views all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in its favor. *Apex*

*Digit., Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). The court does not weigh evidence, consider credibility, or resolve factual disputes. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Rather, the court's job is simply to determine "whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866 (2014) (internal quotation marks and citations omitted).

## ANALYSIS

### I. Dr. Khan's Request to Strike Aspects of Scott's Summary Judgment Motion

As an initial matter, Dr. Khan asks us to strike aspects of Scott's summary judgment briefing for failure to comply with Local Rule 56.1. (Def.'s Mem. at 12–13; Dr. Khan's Reply in Support of Her Motion for Summary Jugdment [sic] ("Def.'s Reply") (Dkt. No. 62) at 2–3.) Local Rule 56.1 governs filing and responding to summary judgment motions in this District. Relevant here, it requires a party moving for summary judgment to submit a statement of material facts in which each fact is accompanied by "citation to the specific evidentiary material, including the specific page number, that supports it." N.D. Ill. L.R. 56.1(a)(2), (d)(2). It also requires that when a memorandum of law addresses facts, it "must cite directly to specific paragraphs in the LR 56.1 statements or responses." N.D. Ill. L.R. 56.1(g). Finally, it prohibits a party from replying to its opponent's responses to statements of fact without the court's permission. N.D. Ill. L.R. 56.1(f).

According to Dr. Khan, Scott's motion for summary judgment does not comply with Local Rule 56.1 in two respects. (Def.'s Mem. at 12–13.) First, Scott did not file the statement of facts as a separate document, but rather, as part of his motion. (*Id.* at 13.) Second, Scott's memorandum in support of the motion cites to exhibits rather than to the statement of facts. (*Id.*) Scott responds to Dr. Khan's first argument only, arguing that he complied with the local rules because he filed a statement of facts with his motion. (Plaintiff's Combined Reply to Its [sic]

Motion for Summary Judgment and in Opposition to Defendant's Cross-Motion ("Pl.'s Combined Resp. & Reply") (Dkt. No. 60) at 2.)

We begin with Dr. Khan's first argument. Scott filed his statement of facts, his motion, and his supporting memorandum in a single docket entry with headings to delineate the beginning of each new document. (*See* Dkt. No. 49.) In our view, the best practice is for a party to file its statement of facts (or response to the opposing party's statement of facts), motion, and legal memorandum as separate docket entries. Documents filed in this manner are easier to follow and cite. Nonetheless, it is not clear that Local Rule 56.1 requires that the statement of facts be filed as its own docket entry. *See, e.g., Del. Motel Assocs., Inc. v. Cap. Crossing Servicing Co. LLC*, Case No. 17 C 1715, 2017 WL 4512709, at *2 (N.D. Ill. Dec. 10, 2017) ("Though some judges in this district have interpreted [Local Rule 56.1] to require separate filings, . . . the undersigned judge does not believe that the rule prescribes any particular practice in this regard.") (internal citations omitted). Because there is some difference of opinion as to whether Local Rule 56.1(a) requires materials to be filed as separate docket entries, and Docket No. 49 distinguishes between documents with the use of headings, we will not strike Scott's motion on this basis.

Turning to Dr. Khan's second argument, we agree that Scott's filings violated Local Rule 56.1(g) by citing to exhibits to support facts instead of specific paragraphs from his Local Rule 56.1 statement. *See* N.D. Ill. L.R. 56.1(g). However, the cited portions of exhibits are not so numerous or lengthy that the citations impede our ability to determine whether the facts at issue are supported by the record, so we will excuse Scott's technical violation of the local rule in this case. *See Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) (observing that district courts have discretion to overlook technical failures to comply with the local rules); *Little v. Cox's*

*Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) ("[I]t is clear that the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion."). Dr. Khan's request to strike Scott's summary judgment motion is therefore denied.

Dr. Khan also identifies three deficiencies in Scott's Combined Reply to Its [sic] Motion for Summary Judgment and in Opposition to Defendant's Cross-Motion, which she claims merit striking as well. (*See* Def.'s Reply at 2–3.) First, she argues that Scott's reply brief does not comport with Local Rule 56.1(f) because it includes a reply to Dr. Khan's response to Scott's Local Rule 56.1 statement of facts, though Scott did not seek leave to file the reply. (*See id*. at 2.) Second, as in the case of Scott's opening brief, Scott's reply cites to exhibits rather than the Local Rule 56.1 statements and responses. (*See id*. at 2–3.) Third, Dr. Khan argues that Scott's responses to several of Dr. Khan's statements of fact should be stricken because Scott states that he lacks knowledge concerning those statements. (*See id*. at 3.)

Dr. Khan is correct that Local Rule 56.1(f) precludes a party from replying to its opponent's response to its statement of facts without leave to do so. *See* N.D. Ill. L.R. 56.1(f). Scott did not move for leave to reply to Dr. Khan's responses to its statements of facts; therefore, by replying to these responses, Scott violated Local Rule 56.1(f). That said, Scott's reply in support of his motion for summary judgment (including the improper reply to Dr. Khan's response to Scott's statement of facts) is only 7 pages long, and at least some of the content styled as a reply to Dr. Khan's response to Scott's statement of facts is arguably proper for a reply in support of summary judgment. Therefore, we will excuse Scott's technical violation of the Local Rule. *See Stevo*, 662 F.3d at 887; *Little*, 71 F.3d at 641.

Likewise, we excuse Scott's citation to exhibits, rather than to Rule 56.1 statements and responses thereto, for the same reasons that we excused the same failure in his opening brief.

*See Stevo*, 662 F.3d at 887; *Little*, 71 F.3d at 641.  As for Dr. Khan's final argument, we agree that Scott's attempt to refute statements of fact by responding that he "lacks knowledge" is ineffective.  *See LeDesma v. Marriott Int'l, Inc.*, Case No. 18-cv-3947, 2020 WL 6747005, at *4 (N.D. Ill. Nov. 16, 2020).  Where Scott asserts that he "lacks knowledge" in response to one of Dr. Khan's statements of fact, we deem the corresponding fact to be admitted.  *See id*. (providing the same treatment where defendants denied statements because they "lack[ed] information" or "lack[ed] knowledge").

**II.     The Parties' Summary Judgment Motions**

Scott alleges that while he was a pretrial detainee, Dr. Khan was deliberately indifferent to his serious medical needs when she did not fill his tooth for more than ten months.  (*See* First Amended Complaint ("FAC") (Dkt. No. 46) ¶¶ 1, 6, 16, 19–25.)  Because Scott's claim relates to his time as a pretrial detainee, it arises under the Fourteenth Amendment of the U.S. Constitution, as opposed to the Eighth Amendment, which governs convicted prisoners' claims for inadequate medical care.  *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 350–52 (7th Cir. 2018).  A pretrial detainee's claim for inadequate medical care consists of the following elements: (1) the pretrial detainee had "an objectively serious medical need; (2) the defendant committed a volitional act concerning the [pretrial detainee's] medical need; (3) that act was objectively unreasonable under the circumstances in terms of responding to the [pretrial detainee's] medical need; and (4) the defendant acts 'purposefully, knowingly, or perhaps even recklessly' with respect to the risk of harm."  *Gonzalez v. McHenry Cnty.*, 40 F.4th 824, 827–28 (7th Cir. 2022) (quoting *Miranda*, 900 F.3d at 353).  We analyze the parties' arguments using this standard even though the parties applied the Eighth Amendment's deliberate indifference standard in their briefing.  (*See, e.g.,* Pl.'s Mem. at 7–9; Def.'s Mem. at 9–12.)

7

A.  **Scott's Motion for Summary Judgment**

Scott argues that he is entitled to summary judgment because the undisputed facts show that "Dr. Khan did not provide [him with] a dental filling . . . until more than 10 months after his initial request" for dental care, causing him to suffer substantial pain. (Pl.'s Mem. at 6.) Scott takes issue with two aspects of his care: (1) the failure to provide an adequate treatment (*i.e.*, prescribing pain medication and offering to extract Scott's tooth, rather than filling the tooth) and (2) the delay in providing him with a filling. (*Id*. at 7–8.)[2] Dr. Khan responds that summary judgment should not be entered in Scott's favor because she did not act with the requisite intent, she was not responsible for scheduling delays, and she offered Scott an adequate treatment, which he declined. (Def.'s Mem. at 7–18.)

For Scott to prevail on his motion, he must show that there is no dispute of material fact concerning each of the four elements of a Fourteenth Amendment claim for inadequate medical care. But there are triable issues of fact that preclude summary judgment here. For example, contrary to Scott's claim, there is evidence that Dr. Khan was *not* responsible for patient scheduling (*see, e.g.,* Khan Decl. ¶ 8), and when Dr. Khan saw Scott, she provided him with a treatment option (extraction and pain medication) that, in her estimation, "would more than likely have resolved his complaints of pain." (*Id*. ¶ 11; *see also McGowan v. Hulick*, 612 F.3d 636, 641 (7th Cir. 2010) (describing the choice between filling and extraction as to "choice of one routine medical procedure versus another").) If Scott had not refused that treatment, his pain might have been alleviated sooner. (*See, e.g.*, Khan Decl. ¶ 12 (noting that Scott could return to

---

[2] Scott also asserts that Dr. Khan did not first see him until more than 30 days after his filling fell out (*see, e.g.*, Pl.'s Mem. at 7), yet he provides no evidence that Dr. Khan was responsible for this initial delay. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) ("For a defendant to be liable under section 1983, she must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights."). Accordingly, we focus only on the alleged delays that took place *after* Scott's initial appointment with Dr. Khan.

the clinic for extraction "at any time").) There is also evidence that Dr. Khan did not ignore Scott's dental needs in the timespan between his first visit and the filling, but rather, that she followed up with him and continued to offer him treatment options during this period. (*See, e.g., id*. ¶¶ 12–14.) Dr. Khan ultimately filled Scott's tooth as requested. (*See id*. ¶ 17.) Based on this evidence, a trier of fact could find that Dr. Khan attended to Scott's dental needs in an objectively reasonable manner.

To be sure, Dr. Caldwell's opinion that a filling was possible could be seen to contradict Dr. Khan's initial recommendation of extraction. But a mere difference of opinion between dental professionals does not show that Dr. Khan's care was inadequate. *See Burton v. Downey*, 805 F.3d 776, 786 (7th Cir. 2015) ("[E]vidence that another doctor would have followed a different course of treatment is insufficient to sustain a deliberate indifference claim."); *McClendon v. Lochard*, Case No. 19-cv-373, 2021 WL 3172982, at *9–10 (N.D. Ill. July 27, 2021) (applying the same proposition from *Burton* to a Section 1983 case concerning a pretrial detainee's medical treatment). Nor is Dr. Khan liable under the Fourteenth Amendment merely because she failed to initially provide Scott with his preferred medical treatment. *See McClendon*, 2021 WL 3172982, at *8 n.3 (observing that pretrial detainees are not entitled to "demand specific care" or "receive the best care possible") (internal quotation marks and citations omitted)); *Bernard v. Scott*, 501 F. Supp. 3d 611, 623 (N.D. Ill. 2020). Indeed, viewing the facts in Dr. Khan's favor, it was Scott's repeated refusals to have his tooth extracted, not Dr. Khan's action or inaction, that caused his prolonged pain. *See Ford v. Cnty. of Winnebago*, Case No. 3:19-cv-50056, 2022 WL 180569, at *7 (N.D. Ill. Jan. 20, 2022) ("[A] detainee cannot refuse medically accepted treatment only to turn around and contend that the doctor unconstitutionally failed to treat his serious medical condition."); *see also Bass by Lewis v.*

*Wallenstein*, 769 F.2d 1173, 1182 (7th Cir. 1985) ("[T]he plaintiff in a section 1983 action must prove a causal connection between his injury and the defendant's unconstitutional conduct.").

Because there are disputes of material fact as to whether: (1) Dr. Khan's treatment of Scott's tooth was appropriate, (2) Dr. Khan was responsible for scheduling delays, and (3) Dr. Khan was the proximate cause of Scott's prolonged pain, Scott's motion for summary judgment is denied.

### B. Dr. Khan's Motion for Summary Judgment

Dr. Khan cross-moves for summary judgment on Scott's claim for three reasons. First, Dr. Khan contends that she cannot be liable for delays in treating Scott because she was not involved in patient scheduling. (Def.'s Mem. at 2.) Second, she claims that she cannot be liable for deliberate indifference based on a difference of opinion between her and Dr. Caldwell. (*Id.*) Third, Dr. Khan insists that there is no evidence in the record that she was aware that Scott was suffering, other than what Scott revealed during his dental appointments, and she offered him an appropriate treatment. (*Id.* at 2–3.)

Scott responds that there is evidence that Dr. Khan *was* involved in scheduling patients— Dr. Khan told him that she would reschedule him. (*See* Pl.'s Combined Resp. & Reply at 4.) Additionally, this is not a case in which two professionals disagreed about an appropriate course of treatment, Scott continues, because Dr. Khan ultimately shared the other dentist's view that restoration of Scott's filling was appropriate, as evidenced by the fact that Dr. Khan restored Scott's tooth. (*Id.* at 5.) Finally, Scott contends that Dr. Khan knew he was suffering from an objectively serious dental condition as of August 2018 because she examined him and recommended treatment. (*Id.* at 6.) Based on his reports of pain to her, she knew that he was suffering from the dislodged filling. (*Id.*)

10

For Dr. Khan to prevail on her motion, she need only show that Scott cannot satisfy one of the elements of his claim. *See Celotex Corp.*, 477 U.S. at 325, 106 S. Ct. at 2554 (where a moving party does not bear the burden of proof as to a particular issue, it may prevail on a motion for summary judgment by showing "that there is an absence of evidence to support the nonmoving party's case"); *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 585 (7th Cir. 2021). We consider Dr. Khan's arguments below.

Scott alleges that Dr. Khan was deliberately indifferent to his medical needs because she initially refused to fill his tooth, despite his complaints of significant dental pain. (*See* FAC ¶¶ 11–13; Pl.'s Mem. at 7.) Dr. Khan responds that she offered Scott an extraction, which she believed would have more than likely alleviated his pain, but Scott refused that option. (*See* Def.'s Mem. at 9–10; Khan Decl. ¶¶ 11, 12.)

Scott neither disputes that Dr. Khan offered him an extraction nor explains why that treatment was inadequate. (*See* generally Pl.'s Mem; Pl.'s Combined Resp. & Reply.) Instead, he seems to assume—without citation to authority—that a filling is preferable to an extraction, that he was entitled to a filling because he demanded it, and that demand was reasonable. (*See, e.g.*, Pl.'s Mem. at 7 (observing that Dr. Khan offered to extract Scott's tooth, but Scott wanted a filling, and Dr. Khan refused to provide one).) However, the Seventh Circuit has described the decision between extraction and filling as "nothing but the choice of one routine medical procedure versus another." *McGowan*, 612 F.3d at 641. And Dr. Khan was not obligated to provide Scott with a filling merely because that was his treatment of choice. *See McClendon*, 2021 WL 3172982, at *8 ("[P]retrial detainees do not have a constitutional right to dictate their medical care.") Because Scott has not explained why extraction was an inadequate remedy for

11

his condition, Dr. Khan's motion for summary is granted as to Scott's theory that Dr. Khan's medical treatment was inadequate.

Scott also claims that Dr. Khan is liable for pain that he suffered because she unnecessarily delayed his treatment. (*See* Pl.'s Mem. at 7.) Dr. Khan moves for summary judgment on this theory, stating, among other things, that she "had no involvement in the collecting or triaging of health service request forms." (Def.'s Mem. at 8; *see also* Khan Decl. ¶ 7.) Nor did she "see, collect or respond to the[] request forms" or have any "involvement in scheduling patients to be seen either for initial appointments or follow up appointments." (Khan Decl. ¶¶ 7, 8; *see also* Def.'s Mem. at 8.)

Scott responds that there is evidence that Dr. Khan *was* involved in patient scheduling because Dr. Khan told Scott that she would reschedule him for another visit (*See* Pl.'s Combined Resp. & Reply at 4; Scott Tr. at 25:1–26:4.) This evidence raises a genuine issue of material fact as to whether Dr. Khan was involved in rescheduling patients—but not as to whether she reviewed Scott's grievances or initially scheduled him for treatment. Just because Dr. Khan allegedly told Scott that she could reschedule him and admitted that she can ask for patients to be scheduled does not mean that she played a role in triaging grievance forms or scheduling Scott's initial appointment. Accordingly, we focus only on the delay in treatment that Scott allegedly experienced for the period following his initial appointment with Dr. Khan on August 6, 2018.

As of August 6, 2018, there is no dispute that Dr. Khan knew that Scott had a dislodged filling and was experiencing pain, and that she recommended that the tooth be extracted and prescribed Scott Acetaminophen for his pain. (Pl.'s Resp. to Def. SOF ¶¶ 12, 13.) Dr. Khan has put forth evidence that she saw Scott again on September 17, 2018, at which time she offered to extract Scott's tooth. (Khan Decl. ¶ 12.) After Scott refused extraction, Dr. Khan prescribed

12

Scott pain medication and told him that he could return for extraction "at any time." (*Id.*) Dr. Khan then examined Scott again on April 8, 2019, during which time she reiterated that Scott's tooth should be extracted and prescribed pain medication. (*Id.* ¶ 13.) Dr. Khan further asserts that she next saw Scott on April 22, 2019, and referred him to a dental surgeon in Division 5 for an extraction. (*Id.* ¶ 14.) Dr. Khan states that Scott was scheduled to see another dentist on May 16, 2019, but he refused to appear. (*Id.* ¶ 15.) Scott then saw Dr. Caldwell in Division 5 on June 5, 2019, at which time, Dr. Caldwell told Scott that he could receive a filling. (*Id.* ¶ 16.) Approximately three weeks later, on June 20, 2019, Dr. Khan restored Scott's filling. (*Id.* ¶ 17.)

Scott "lacks knowledge as to any records reflecting that he saw" Dr. Khan on September 17, 2018, April 8, 2019, or April 22, 2019, and that he refused to appear before a dentist on May 16, 2019. (*See* Pl.'s Resp. to Def.'s SOF ¶¶ 14–17.) However, he does not provide evidence that directly contradicts Dr. Khan's statements. (*See id.*) Accordingly, we deem those facts to be undisputed. *See Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710 (7th Cir. 2015) (affirming district court decision to deem facts admitted where denials were not appropriately supported with citation to the record); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) ("[W]here a non-moving party denies a factual allegation by the party moving for summary judgment, that denial must include a specific reference to the affidavit or other part of the record that supports such a denial."). It is also undisputed that Scott saw Dr. Caldwell on June 5, 2019, that she told him he could receive a filling on that date, and that Dr. Khan filled his tooth on June 20, 2019. (*See* Pl.'s Resp. to Def.'s SOF ¶¶ 18, 19.)

However, the parties dispute *why* Dr. Khan referred Scott to Division 5. Dr. Khan states that she referred Scott to Division 5 for a tooth extraction; Scott testified that she referred him to Division 5 for a filling. (*See* Khan Decl. ¶ 14; Scott Tr. 30:19–20.) From Scott's perspective,

13

the distinction is significant because this means Dr. Khan could have filled Scott's tooth at an earlier date (*see, e.g.*, Khan Decl. ¶ 17 (reflecting that Dr. Khan is the dentist who ultimately filled Scott's tooth)) but introduced unnecessary delay by referring Scott to Division 5 instead. (*See* Pl.'s Combined Resp. & Reply at 4–5.)

But this dispute does not warrant a trial. Regardless of whether Dr. Khan was capable of filling Scott's tooth at an earlier date, Scott has not provided sufficient evidence from which a reasonable jury could find that Dr. Khan, in taking the approach that she did, acted objectively unreasonably or purposefully, knowingly, or recklessly regarding the risk of harm to Scott. *See Gonzalez*, 40 F.4th at 828 (setting for the elements of a claim for inadequate medical care). The record reflects that after Dr. Khan learned of Scott's condition, she recommended a treatment that she thought would alleviate his pain, scheduled follow-up appointments, offered that he could have his tooth extracted "at any time," referred him to another dentist, and then followed that dentist's suggestion and filled Scott's tooth. (*See* Khan Decl. ¶¶ 10–17.) Scott does not quibble with the timing between appointments. (*See generally* Pl.'s Mem; Pl.'s Combined Resp. & Reply.) Nor does Scott direct us to any evidence from a medical expert or otherwise suggesting that no competent medical professional would have proceeded as Dr. Khan did. (*See generally id.*) He simply asserts—without supporting evidence—that Dr. Khan should have filled his tooth when she first saw him. (*See* Pl.'s Mem. at 7.) But there is no evidence that Dr. Khan thought Scott's condition should be treated with a restored filling until Dr. Caldwell examined him or even that a competent dentist would have sent him for a second opinion sooner. (*See generally* Pl.'s Mem.; Pl.'s Combined Resp. & Reply.) At most, Scott seems to suggest that Dr. Khan was lying when she allegedly told him that she did not "do fillings." (*See* Pl.'s Combined Resp. & Reply at 6–7.) But even this does not show that Dr. Khan acted objectively

14


unreasonably or purposefully, knowingly, or recklessly with regard to the risk of harm to Scott by recommending extraction. Scott's theory is simply not supported by enough evidence to survive Dr. Khan's motion. Summary judgment is granted in Dr. Khan's favor.

## CONCLUSION

For the reasons stated above, we deny Scott's Motion for Summary Judgment (Dkt. No. 49), and grant Dr. Khan's Motion for Summary Judgment. (Dkt. No. 52.) This civil case is terminated. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: August 19, 2022